IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

ARTISAN POOLS, INC. V. SIEMER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ARTISAN POOLS, INC., A NEBRASKA CORPORATION, APPELLEE,

V.

JOSHUA SIEMER AND JENA SIEMER, INDIVIDUALS, APPELLANTS.

Filed May 12, 2026.    No. A-25-246.

Appeal from the District Court for Washington County: ZACHARY L. BLACKMAN, Judge. Affirmed.

Rhys T. Hansen and David V. Drew, of Drew Law Firm, P.C., L.L.O., for appellant.

Oluseyi O. Olowolafe, of Olowolafe Law Firm, L.L.C., for appellee.

RIEDMANN, Chief Judge, and BISHOP and FREEMAN, Judges.

RIEDMANN, Chief Judge.

## I. INTRODUCTION

Joshua Siemer and Jena Siemer appeal from the order of the district court for Washington County. The Siemers argue the court erred by finding that Artisan Pools, Inc. (hereinafter "Artisan") did not act in bad faith when it filed or later refused to release its construction lien on their property. For the reasons stated herein, we affirm.

## II. BACKGROUND

In May 2023, Artisan, a company that builds residential in-ground pools, and the Siemers executed a written contract for Artisan to build a pool on the Siemers' property. The contract was later modified to provide that construction of the pool would be completed in stages and the Siemers would pay a percentage of the total contract price at the completion of each stage.

The Siemers made the required payments until Artisan requested the final payment on July 31, 2023. The Siemers refused to disperse the final payment because they were dissatisfied with aspects of Artisan's work. After some conversations regarding the Siemers' grievances, communication between Artisan and the Siemers broke down. After a heated conversation between Artisan's owner, K.C. Barth, and Joshua, Barth sent Joshua a text message on September 15, terminating the parties' contract, and stating that Artisan intended to sue the Siemers and file a lien on their property the next week.

Through counsel, the Siemers sent Artisan a letter later in September 2023, setting forth various issues they had with the pool, including that a required inspection by the city had not been completed. On December 1, Artisan called the city inspector, and the inspection of the pool was completed in early January 2024.

On January 25, 2024, Artisan filed a construction lien on the Siemers' property. In the lien application, Artisan stated that the Siemers had not made the final payment under the contract, and it identified December 1, 2023, as the last date on which it had provided materials or services. Artisan never sent a copy of the lien to the Siemers.

On February 6, 2024, the Siemers' attorney sent a letter to Artisan, demanding that it release the lien. This letter stated the lien was void because it overstated the amount due under the contract, it misidentified the last date services were performed, and the Siemers did not receive the legally required notice. However, Artisan did not release the lien.

The Siemers' attorney sent another letter on February 16, 2024, informing Artisan that the Siemers had "gone under contract" to sell their home and demanding again that Artisan release its lien because it was invalid for the same reasons listed in the February 6 letter. Artisan still did not release the lien.

In March 2024, Artisan filed a complaint against the Siemers in the district court, seeking foreclosure on the construction lien and damages for breach of contract and unjust enrichment. The Siemers filed an answer denying Artisan's allegations, asserting affirmative defenses, and setting forth a counterclaim for bad faith lien, slander of title, breach of contract, and unjust enrichment. Regarding the bad faith lien, the Siemers specifically asserted that Artisan filed and refused to release the lien on their property in bad faith because the lien was filed outside the requisite statutory timeframe, and they were not given proper notice of the lien; they accordingly requested the court award damages and attorney fees.

A bench trial was held on two dates in November 2024. Barth testified at trial that he believed the lien was valid. He stated that he believed the lien was filed within the statutory timeframe because the phone call he made for the city inspection of the pool constituted services rendered under the contract. Thus, he believed December 1, 2023, was the date from which the statutory timeframe would be calculated.

Barth also testified that he had "no reason to believe that the [Siemers] were not given notice" of the lien. He testified that although neither he nor anyone else at Artisan had sent notice to the Siemers, the county register of deeds had provided the Siemers with "constructive" notice of the lien. He further explained that the February 6, 2024, demand letter implied that the Siemers had received notice of the lien from the county register of deeds within 10 days of its filing; therefore, Artisan sending notice would have been redundant.

Because Artisan sending a copy of the lien to the Siemers was a prerequisite to foreclosure, the court granted a directed verdict against Artisan on its claim for foreclosure of the construction lien. The district court entered an order resolving the parties' remaining claims. The court noted that it generally found the testimony of all witnesses to be credible.

Regarding the competing claims for breach of contract, the court found that Artisan breached the contract by making a premature demand for payment and that it unjustifiably terminated the contract prior to full completion of the contract. It awarded the Siemers a setoff against the remaining amounts due. It denied Artisan's claim for unjust enrichment and denied the Siemers' claim for slander of title.

As to the claim for bad faith lien, the court noted that although the lien was not valid because Artisan had failed to provide the Siemers with notice, there was no evidence that Artisan had knowledge the construction lien was invalid or that Artisan acted in reckless disregard for such facts when it filed or refused to release the lien.

The Siemers now appeal only from the portion of the district court's order denying their claim for bad faith lien.

## III. ASSIGNMENT OF ERROR

The Siemers assign, restated and condensed, that the district court erred by denying their claim for bad faith lien.

## IV. STANDARD OF REVIEW

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Tilt-Up Concrete v. Star City/Federal*, 255 Neb. 138, 582 N.W.2d 604 (1998).

An appellate court will uphold a lower court's decision allowing or disallowing attorney fees for frivolous or bad faith litigation in the absence of an abuse of discretion. See *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011). See also *Model Interiors v. 2566 Leavenworth, LLC*, 19 Neb. App. 56, 809 N.W.2d 775 (2011), *disapproved on other grounds, Echo Group v. Tradesmen Internat.*, 312 Neb. 729, 980 N.W.2d 869 (2022).

## V. ANALYSIS

The Siemers claim that the district court's order should be reversed because Artisan acted in bad faith when filing and refusing to release its construction lien on their property.

Under the Nebraska Construction Lien Act, Neb. Rev. Stat. §§ 52-125 to 52-159 (Reissue 2021) ("NCLA"), "[a] person who furnishes services or materials pursuant to a real estate improvement contract has a construction lien . . . to secure the payment of his or her contract price." § 52-131(1). Section 52-157 provides, in relevant part:

> (2) If in bad faith a claimant records a lien, overstates the amount for which he or she is entitled to a lien, or refuses to execute a release of a lien, the court may:
>
> (a) Declare his or her lien void; and

(b) Award damages to the owner or any other person injured thereby.

(3) Damages awarded under this section may include the costs of correcting the record and reasonable attorney's fees.

It is undisputed that Artisan recorded a lien on the Siemers' property and refused the Siemers' requests to release the lien. Accordingly, the only factor at issue is whether Artisan acted in bad faith.

Although § 52-157 does not define "bad faith," the Nebraska Supreme Court has previously held that to act in bad faith under this statute, one must either know his or her lien is invalid or overstated or act with reckless disregard as to such facts. See *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011). The Court has further clarified that an act taken in bad faith, by definition, cannot be unintentional. See *id*. Thus, when a claimant is honestly mistaken about the validity of its lien and does not recklessly disregard facts showing its lien may be invalid, the person on whose property the lien was filed is not entitled to damages under § 52-157. See *Chicago Lumber Co. of Omaha, supra.* The focus of the test for bad faith is on the actor's state of mind during its filing of or refusal to release its lien. See *id.*

We take this opportunity to clarify that the Siemers do not prove bad faith by showing the lien was invalid; instead, they must present evidence that Artisan knew or recklessly disregarded such facts when it filed or refused to release the lien. See *id.*

### 1. FILING CONSTRUCTION LIEN

The Siemers claim that Artisan acted in bad faith by filing its lien because it had actual knowledge that the lien was filed outside the requisite statutory timeframe, and it had actual knowledge or reckless disregard for the fact they were not given statutorily required notice of the lien. For the following reasons, we reject this argument.

### (a) Filing Timeframe

Section 52-137(1) provides, in relevant part: "A claimant's lien does not attach and may not be enforced unless, after entering into the contract under which the lien arises and not later than one hundred twenty days after his or her final furnishing of services or materials, he or she has recorded a lien."

Here, the district court recognized that "Barth believed the fact that he had to place a call to the City Inspector" and that he did so on December 1, 2023. The court accordingly found Barth believed December 1 was the date of the final furnishing of services and therefore Artisan did not act in bad faith by filing the lien because it did so within 120 days of that date.

The Siemers argue that the court erred in its determination because Artisan had actual knowledge that it was filing its construction lien outside of the timeframe set forth by § 52-137(1). According to the Siemers, Artisan was aware "the lien timeline had commenced on August 1st[, 2023]," the date on which the pool was substantially completed, or at the latest, September 15, when Artisan sent the text message terminating the parties' contract. Brief for appellants at 19. However, Barth testified at trial that he believed December 1, 2023, the date he made the call for the city inspection of the pool, was the date of final services rendered under the contract and thus was the date from which the statutory timeframe for filing the lien should be calculated.

- 4 -

Nonetheless, the Siemers cite to *Occidental S. & L. Assn. v. Cannon*, 184 Neb. 659, 666-67, 171 N.W.2d 166, 171 (1969), which states that, "after a contract for material or labor is substantially completed, there should be no unreasonable delay in filing a claim for a lien if one is desired, and the time for filing a lien cannot be delayed by performing minor labor or furnishing minor items of material." They argue that conflicting testimony at trial shows Artisan "knew the [city] inspection was not a sufficient furnishment of service to extend the lien timeline." Brief for appellants at 17. Specifically, they point to Barth's testimony in which he stated, "[F]inal payment under the terms of [the contract] did not require an inspection." The Siemers argue that Artisan cannot simultaneously believe that the inspection was insignificant enough to overlook its completion when requesting the final payment, but somehow also significant enough to constitute a final service which reset the lien timeline.

Although Barth testified that an inspection was not required under the contract and that substantial completion of the pool's construction occurred on or before August 1, 2023, the record shows the Siemers had indicated they would not render the final payment until an inspection was completed. Barth testified that, during the heated conversation on September 15, Joshua "expressly stated that he wasn't going to pay anything until final inspection," and so Artisan "made sure to pursue getting that done." Further, Barth testified that he waited "45 days" after the inspection but, after not receiving payment, he decided to file a lien on the Siemers' property. We also give weight to the fact the district court concluded that Barth believed he was required to obtain an inspection. See *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021) (giving significant weight to court's credibility determination in bench trial). Thus, we find the evidence supports Barth's belief that December 1, 2023, qualified as the last date of services rendered.

Because Barth believed December 1, 2023, qualified as the last date of service and filed the lien within 120 days of that date, Artisan did not act intentionally or with reckless disregard of facts which would show it was filed outside the timeframe prescribed by § 52-137(1). Therefore, it did not act in bad faith when filing the lien.

### (b) Notice Requirement

The Siemers argue on appeal that Artisan filed the lien in bad faith because it did not provide notice of its filing as required by statute. Section 52-135(3) provides, in relevant part, that the "claimant shall send a copy of a recorded lien to the contracting owner within ten days after recording." The Siemers contend that "the district court erred in finding that the lien was not recorded in bad faith because Artisan Pools knew, or recklessly disregarded the fact that they failed to give notice as required under the [NCLA]." Brief for appellants at 21. We note that although the issue of notice was litigated, the absence of serving notice was the basis for granting a directed verdict against Artisan on its claim to foreclose the lien. The court's order does not address notice as it relates to the Siemers' argument that the lien was filed in bad faith. Any claim regarding failure to provide notice as it relates to bad faith is more appropriately analyzed in reviewing whether Artisan acted in bad faith when it refused to release the lien.

Nonetheless, we interpret the Siemers' argument to be that Artisan filed the lien in bad faith because, at the time of filing, it had actual knowledge or reckless disregard for the fact that it was required to send notice of the lien within 10 days of its filing. It failed to do so.

It is undisputed that Artisan never sent notice of the lien to the Siemers, and that the district court determined the lien was therefore invalid. However, we again recall that we are concerned only with whether Artisan acted with bad faith when it filed the lien, not whether the lien was valid. See *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011).

Barth testified at trial that he believed the lien was valid. He explained that he had relied upon "constructive notice" from the county register of deeds and that he believed the Siemers had received such notice of Artisan's lien within 10 days of its filing. The district court found this testimony to be credible.

Barth's testimony indicates Artisan mistakenly believed notice from the county register of deeds was sufficient. The Siemers contend that "the district court erred [by] finding [] Barth credible in his [] belief that he was excused from the statutory notice requirement in good faith." Brief for appellants at 22. However, as we have stated, we give weight to the fact the district court accepted this version of the facts. See *Wayne L. Ryan Revocable Trust v. Ryan*, 308 Neb. 851, 957 N.W.2d 481 (2021). Therefore, we reject the Siemers' argument that Artisan filed its lien in bad faith on this basis. See *Chicago Lumber Co. of Omaha, supra*.

2. REFUSAL TO RELEASE CONSTRUCTION LIEN

The Siemers additionally contend that Artisan refused to, "release [its] lien with knowledge or reckless disregard to the facts causing lien's invalidity and without a reasonable basis to believe otherwise." Brief for appellants at 25-26. They argue that Artisan's refusal to release the lien under these circumstances is "the epitome of bad faith." *Id*. at 28. We disagree.

(a) Demand Letters

The Siemers contend the evidence in this case shows Artisan knew that the lien was not recorded within the 120-day time limitation and that it did not mail a copy of the recorded lien; thus, Artisan should have known that the lien was not filed in conformity with the NCLA. They argue that, even if Artisan did not know its lien did not comply with the law at the time it was filed, the Siemers' demand letters cured Artisan's "ignorance of the law." Brief for appellants at 28.

The record shows the Siemers' demand letters stated, in part, that the lien was invalid because it was filed outside the 120-day statutory timeframe under § 52-137(1), and because they had not received proper notice under § 52-135(3). Barth testified at trial that he did not release the lien despite the February 6, 2024, demand letter, because he believed the lien was valid.

First, although the Siemers' demand letters alleged Artisan had not provided materials or services under the contract within 120 days of filing the lien, we have explained the credible evidence indicates Barth believed December 1, 2023, was the final date of services rendered under the contract. Barth consequently believed the lien was filed within the statutory timeframe.

Also, it is uncontested Artisan never sent notice of the lien. However, we reiterate that even though Barth was incorrect, the evidence indicates he believed that Artisan was not required to send notice to the Siemers because notice from the county register of deeds was sufficient. Barth explained that he initially had only a copy of his application for a lien and that he did not receive a copy of the actual lien until approximately a week later. Therefore, he claimed he could not have sent a copy of the lien at the time he filed his application.

Barth additionally testified that the Siemers' February 6, 2024, demand letter constituted only a "claim that [they] didn't receive notice, not that there wasn't notice." Furthermore, Barth believed that because the demand letter referenced the lien, the Siemers' counsel had received a copy of the lien from the county register of deeds within 10 days of it being filed, and thus any notice from Artisan would have been redundant. These statements support a finding that Barth did not act in bad faith in refusing to release the lien after receiving the demand letters.

The Siemers argue that the district court "ruled that an affidavit is required to establish a factual basis for the release of a lien," referencing the district court's citation to *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011). Brief for appellants at 25. They misconstrue the district court's order.

In *Chicago Lumber Co. of Omaha, supra*, a supplier of lumber for a home project brought an action to foreclose a construction lien based on failure to pay in full. The homeowner filed a counterclaim for bad faith for failing to release the lien. See *id*. The district court granted summary judgment in favor of the homeowner for bad faith. On appeal, the Supreme Court reversed the order, citing a genuine issue of material fact regarding the lumber company's knowledge that full payment had been received. *Id*. In doing so, the Supreme Court noted that the company did not act in bad faith for not initially releasing the lien because the documents provided to it to prove payment were confusing. *Id*. However, the homeowner later provided additional documentation through an affidavit substantiating her claim that no money was owed on the project. As to whether the lumber company acted in bad faith thereafter presented a question of fact precluding summary judgment. *Id*.

The homeowner also sought bad faith damages based on the lumber company's failure to send a notice of the lien. The lumber company provided an affidavit setting forth its normal practice of sending a copy of the lien to the homeowner and believed it had followed its procedure as to this lien. *Id*. The homeowner asserted she did not receive it. The Supreme Court reversed the district court's order in favor of the homeowner on this issue stating that the lumber company had a reasonable basis for believing the homeowner had received a copy. *Id*. It stated

> [The homeowner] does not show bad faith by merely stating that she never got a copy of the lien; she must present evidence that [the lumber company] knew [she] had not received the copy or that it recklessly disregarded facts showing that she had not received a copy when it refused to release the lien.

*Id*. at 22, 809 N.W.2d at 478.

In reaching these decisions, the Supreme Court did not hold that an affidavit was required; rather, it cited the evidence presented upon which each party relied to support their position. In the present case, the district court's reference to *Chicago Lumber Co. of Omaha, supra*, was to differentiate between the proof provided in each case. In *Chicago Lumber Co. of Omaha*, the homeowner provided payment documentation to support her claim the lien was invalid; in the present case, the Siemers presented demands from their attorney *claiming* the lien was invalid. Regardless, the *Chicago Lumber Co. of Omaha* court did not make a determination of bad faith based upon the homeowner's affidavit; rather, it found it created an issue of fact. We read the district court's reference to *Chicago Lumber Co. of Omaha, supra*, to explain why the Siemers' claim that their demand letters provided the factual basis needed to prove Artisan's bad faith failed.

Barth's testimony makes clear that he believed the lien was valid and that the demand letters did not prove otherwise. Without being provided a factual basis that invalidated the lien, Artisan had a basis upon which to believe its lien was valid; therefore, it did not act intentionally or with reckless disregard of the lien's invalidity when it refused to release it.

### (b) Reasonable Basis

The Siemers additionally argue that Artisan had no "reasonable basis" for its belief that its lien was valid because it was untimely filed, and Artisan failed to provide notice. Brief for appellants at 30. They argue that had Artisan taken reasonable steps to determine whether its position was accurate, it would have discovered that it was not. They essentially argue that Artisan had a duty to investigate its mistaken beliefs and its failure to do so constitutes bad faith.

While we acknowledge that bad faith can be proven through a reckless disregard of facts proving the invalidity of a lien, we cannot say under the facts of this case that Barth recklessly disregarded such facts. Although he may have acted under a mistaken belief of the law by not providing timely notice of the lien, we decline to find this synonymous with a reckless disregard.

We note that the district court determined Artisan breached the contract by making demand for final payment before the project was completed, which it determined required a final inspection by the city. Barth testified he considered his final date of service as the date he made the call for the inspection. Therefore, we are unable to say that even had Barth taken steps to determine the timeliness of his lien, he would have been advised his lien was untimely filed.

The focus of the test for bad faith is the lienholder's state of mind, and a finding of bad faith cannot be based upon actions that are unintentional or constitute honest mistakes. See *Chicago Lumber Co. of Omaha v. Selvera*, 282 Neb. 12, 809 N.W.2d 469 (2011). We decline to find on this record that the Siemers proved Artisan lacked a reasonable basis for filing the lien or for refusing to release it.

### VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.